ARKANSAS POWER & LIGHT COMPANY v. MARSH.

4-5028

Opinion delivered April 18, 1938.

*Gordon E. Young, House, Moses & Holmes* and *Eugene R. Warren,* for appellant.

*F. D. Goza,* for appellee.

BAKER, J. This suit was by Ed Marsh to recover damages by reason of injuries suffered by Mrs. Lillie Marsh, his wife. He alleged loss of companionship, expense of medical and doctors' bills, arising out of Mrs. Marsh's injuries, which were caused by her stepping into a hole alleged to have been dug and left unprotected by the defendant, appellant here. The allegations show that this hole was dug at an intersection of Hall and Moore streets, in the town of Donaldson. The hole was put down sometime about 1931. The injury sued for occurred at least four years later. The trial occurred in July, 1937, when the jury rendered a verdict for $600 and this appeal is from the judgment rendered thereon.

Appellant to reverse this judgment asserts the following matters:

1. That the testimony failed to show that the hole in question was dug by the Arkansas Power & Light Company.

2. That the court erred in refusing to direct a verdict because the testimony shows that there was no negligence on the part of the Arkansas Power & Light Company.

3. That even if the defendant negligently left the hole open, into which Mrs. Marsh fell, the intervening acts of third parties completely superseded all negligence of the defendant; and,

5. That the court erred in refusing to permit the appellant to introduce photograph of the scene of the accident.

Some other matters were set forth in the motion for a new trial, but the foregoing are the only ones presented by the briefs.

We cannot think it will be of any real service to set forth with any degree of detail the evidence in this case, and on some of the matters presented, it must be sufficient merely to state our conclusions as to facts as we feel that we are precluded from further consideration of them on account of the record, which discloses that there was at least substantial evidence to support the verdict of the jury. If we were the triers of some of these facts.

upon the record as it is presented here, we would probably hold that the preponderance of the evidence was different from conclusions reached in the rendition of the verdict, but we could not say and do not say, after an examination of this record, that there is not substantial evidence to support the findings of the jury. These observations are peculiarly applicable to the first proposition argued upon this appeal, that is that the appellant company did not dig this hole. Two or three witnesses testified positively that employees of the appellant company, known by the witnesses, to be such, did dig or construct the hole that is alleged to have caused the injuries suffered. We must regard that evidence as substantial and the finding of the jury as conclusive thereon.

The second point argued by the appellant is that the company was not guilty of negligence for the reason that the hole was not dug or placed at a point where one might ordinarily be expected to walk or travel, and that on that account there was no negligence. Numerous cases are cited upon this proposition, but we do not think those cases are in point for the reason that, as we recall now, in every case cited, the injured person entered upon the property of another and there fell into some pit or hole or excavation, and it was held in those cases that the owner of the property did not have to make it safe for the protection of trespassers.

These are cases in which the attractive nuisance doctrine does not apply. As we understand the situation in this case, according to the evidence, this hole, for the location of the pole, upon which wires were presumed to have been placed for the transmission of electric current, was dug not upon the sidewalk, as argued by appellee, but between the space which might have been used for sidewalk purposes, though no actual sidewalk structure had been placed there, and that portion of the street ordinarily used for vehicular traffic. To express it differently, the hole was constructed near the gutter line between the place where the sidewalk might have been and the place traveled in the street, but it was not placed upon any property belonging to any individual.

One travelling in that particular place or crossing the street at that corner, or moving out of the street to the place of the sidewalk might properly have done so at any time without expecting the dour results of falling into an open hole that had previously been dug at that locality and been left without any kind of cover, guard or notice indicating its location and possible dangers.

It may be said in addition that at the time Mrs. Marsh fell into this hole it was practically overgrown with weeds and grass, as was the place of the sidewalk, and that sidewalk space was also thickly overgrown with weeds and grass, and it was to get out of and away from this that Mrs. Marsh turned out from the sidewalk space to go upon the street as a more comfortable place in which to travel, at the time she fell into the hole. There is nothing to point to her as a trespasser, as one invading another's property without right, nor that she was at any place improper for her to be for any reason whatever. She might reasonably have been expected, we think, to have done just as she did, to have left the high grass and weeds to find a place more comfortable along which to walk.

Without discussing the numerous authorities cited, or any of them, we necessarily pass them with this statement of our conclusions, that they are inapplicable to the foregoing facts.

The third reason assigned by the appellant has given us considerable concern. It is argued that even if the appellant company had dug the hole and left it open as alleged and testified to by several witnesses, there are some intervening agents and agencies which serve to protect the appellant against its original act of negligence.

The facts most briefly stated in this regard are to the effect that about two years prior to the time of the alleged injury, some WPA workers upon the street, using a tractor as one of the machines employed to do the street work, filled up this hole by placing in it a post or pole, eight or ten feet long and perhaps five or six inches in diameter at the end inserted into the hole. In cutting the ditch line or gutter, these men were afraid

they might run a wheel of the tractor into this hole, which was said to have been fifteen inches in diameter, and in order that it might be definitely marked, this pole was placed therein. There is some evidence that a few shovels full of dirt might have been thrown in, but this fact, whether true or not, is perhaps immaterial. We think it probably most certain that no one would have stepped into the hole during the time that this pole was left or remained there. When these laborers had completed their job they left the pole still standing as they had placed it. It perhaps remained there for a period of nearly or about two years. During that period two men who testified in the case said they were building a garden or yard fence near this corner and used this pole as an object to which wire stretchers were fastened in order that the wire fence might be properly stretched. It may be said, we think, that the pole was sufficiently well placed that it became a marker, that even though it did not completely fill the hole, it made it highly improbable that anyone might have stepped or placed his foot in the hole without intending to do so. After this pole had been so stationed in this hole for a time, perhaps, more than a year, some boys in the neighborhood, three of whom testified, began to play and swing upon this pole. Perhaps the end of it was bent and it may be that these men who used it to stretch the wire had slightly widened the opening, or it may be that the boys in playing thereon, swinging and turning it about, had somewhat enlarged the opening at the top. At any rate, this pole which had been placed there more than a year prior thereto, perhaps nearly two years, was broken off, about or nearly even with the surface of the ground. This statement, partly surmised, as the evidence is not clear in that respect, is, we think, correct as it may be assumed that the top of the hole, or edge of the same at the surface, was a fulcrum upon which the pole was broken by the boys swinging upon it. There still might not have been very much danger if conditions had been left as they then were, but after breaking this pole, these small boys, thirteen, or fourteen years old, took the broken stump

out of the hole and left it open, just as it is said the appellant company left it when it was first dug, fifteen to eighteen inches deep, several inches wide across the top. We think it practically conclusive that during all the time which the pole stood in the hole no one might reasonably have been expected to have fallen or stepped therein. The fact that the pole stood there was in itself a signal or guard, and only by intending to do so might one place his foot therein.

Substantially the foregoing facts are stated and relied upon by the appellant, and the same facts are restated in appellee's brief. There is, therefore, no reason to quote the evidence of any witness tending to establish them.

The question that arises from these facts, as they are stated by both parties, substantially to the same effect, is one of law. However effective these intervening agencies were, the facts disclose that they were temporary. It was not the intention of the WPA worker who placed the pole in this opening to close it permanently, but the intention made no difference if his act had been such as permanently to abate the nuisance of the open pit upon the street, or so near the point of travel that one might reasonably be expected to go or pass thereupon. The boys who played upon this pole did nothing, as we observe from these facts, that tended in any manner to increase the dangers that were present from and after the date of the digging of the hole until the pole was first placed in it. Experience teaches that active boys find many things for their amusement, and for use as play things, and their conduct in playing upon this loose pole, swinging upon it, and finally breaking it, merits no kind of criticism, and it in no sense points to any impropriety of boys' conduct, and we make the same statement as to the removal, after the breaking of the pole, of that portion of it which remained in the bottom of the hole.

If the appellant company had attempted to close the hole by dropping therein a similar piece of timber, it most probably might have been determined by a jury

that children playing near it might, out of curiosity, or perhaps for no reason at all, remove it and the temporary filling become ineffectual as a protection or guard against possible or probable injury to people who might have cause or reason to pass that way.

We are not unacquainted with that rule of law in regard to the responsibility of an intervening agent, but we are convinced that any agency in itself might have cured the effect of appellant's negligence, for instance had the hole been so located that water flowing in this nearby gutter might have filled it with sand and gravel, those inanimate agents would have served as ample protection to the one guilty of the primary negligence. The intervening agent, however, to protect the one guilty of primary negligence, must be such that the accident or injury would not have occurred, or would not have been suffered, except for the conduct or action of the intervening agent, as independent of the acts constituting the primary negligence. So if we properly analyze these facts, we must find that although the WPA worker, who stood the pole in the hole, may have temporarily abated the nuisance or danger and the boys who later removed a portion of it from the hole did not themselves dig or construct a new hole in the same place. They merely left the same opening that had been left by the original wrongdoer.

We think the foregoing must be the only conclusions possible to be reached.

For a determination of liability, appellant argues the intervening efficient cause, that is to say the laborer who put the post in the hole, the boys who finally took out the broken stump.

From Corpus Juris, we cite: *"Intervening Efficient Cause*—1. General. It is well settled that the mere fact that other causes, conditions, or agencies have intervened between defendant's negligence and the injury for which recovery is sought is not sufficient in law to relieve defendant from liability. In other words, an intervening cause will not relieve from liability where the prior negligence was the efficient cause of the injury. The test

is not to be found in the number of intervening events or agencies, but in their character and in the natural connection between the wrong done and the injurious consequences, and if the injury is the natural and probable consequence of the original negligent act or omission, and is such as might reasonably have been foreseen as probable, the original wrongdoer is liable, notwithstanding the intervening act or event.

"Intervening cause as proximate cause. But an intervening cause will be regarded as the proximate cause, and the first cause as too remote where the chain of events is so broken that they become independent and the result cannot be said to be the natural and probable consequence of the primary cause, or one which ought to have been anticipated. The law will not look back from the injurious consequences beyond the last efficient cause, especially where an intelligent and responsible human being has intervened." 45 C. J. 926, § 489.

But this intervening efficient cause is not a new proposition in our law; it is but another method of discussing and determining what is or was the proximate cause of injury. It may be said too that such intervening or efficient cause need not necessarily be the act of responsible human beings. It may be a changed condition over which the original wrongdoer had no control or influence and the act causing injury wholly outside his agency or control in any respect. However, if that original act of negligence was the actual or efficient cause thereof, it may pass through many or several phases or circumstances and continue to be the proximate cause, until some other intervening cause appears, without which the particular accident would not have occurred. This question is discussed in *Bona* v. *Thomas Auto Co.,* 137 Ark. 217, 208 S. W. 306. It was urged in that case that the proximate cause of the injury was the defective steering gear of an automobile, rather than excessive speed of the driver as he rounded a corner and inflicted the injuries causing the suit. In discussing that question the court quoting from one of the older cases, *Pittsburg Reduction Co.* v. *Horton,* 87 Ark. 579, 113 S. W. 647,

18 L. R. A., N. S., 905, said: "that if, subsequent to the original negligent act a new cause has intervened, of itself sufficient to stand as the cause of the injury, the original negligence is too remote."

There was cited also in this opinion the case of *Arkansas Valley Trust Co.* v. *McIlroy*, 97 Ark. 160, 133 S. W. 816, 31 L. R. A., N. S., 1020, and also, *American Bridge Co.* v. *Seeds*, 144 Fed. 605, 11 L. R. A., N. S., 1041, and other cases including the case of *Helena Gas Co.* v. *Rogers*, 104 Ark. 59, 147 S. W. 473. This theory of independent efficient cause in the case of *Bona* v. *Thomas Auto Co.*, *supra*, was in direct conflict with the theory of the appellant to the effect that excessive speed and failure to keep the car under control was the cause of the injury, and the court held that it became a question of fact to be determined by the jury under proper instructions.

These several cases just mentioned, containing the conclusions reached and the declarations of the court in regard thereto, are among the clearest announcements of our court upon this question, and we think it may now be simply stated that the question of the intervening efficient cause is but another way of saying that the first alleged act of negligence is not the proximate cause, but that the so-called intervening cause is the proximate cause of the injury. One who must respond in damages must be negligent, and his negligence must be the proximate cause of injury in order that there may be a recovery against him.

The two appeals in the case of *Ry. Co.* v. *Steel*, 119 Ark. 349, 178 S. W. 320, L. R. A. 1915 F. 1114, and as tried anew upon slightly different state of facts and appearing in 129 Ark. 520, 197 S. W. 288, is another clear illustration of the same principle involved in the case of *Pittsburg Reduction Co.* v. *Horton*, *supra*, and other cases above mentioned, with the same result announced.

A more striking case is that of *St. L. & S. F. Ry. Co.* v. *Williams*, 98 Ark. 72, 135 S. W. 804, 33 L. R. A., N. S., 94. That case in many respects was like the case of *Pittsburg Reduction Co.* v. *Horton*, *supra*. The railroad com-

pany had been for a long period of time employing a method of warning or giving signals to trains by placing torpedoes upon the track, which would be exploded by the next passing train. A child observed these torpedoes when they were put out and immediately removed one of them and took it away and he and his younger brother exploded the torpedo, causing injuries to the younger one. It was urged that the railroad company was negligent in the use of these dangerous substances by leaving them unguarded while not in use. It was urged by way of defense that the alleged negligent act causing the accident, the placing of the torpedo upon the track, was broken by act of the child who took the torpedo and carried it to the other who was injured; that theory of defense, however, seemed not to have been very highly regarded by the court as this court approved the finding of the jury, that the small child, on account of his age and inexperience, was not guilty of negligence. The court, however, decided the case upon another theory, and that is that the railroad company was not guilty primarily of any negligence in the use of the torpedo under the facts stated.

Several of the foregoing cases were cited as authority for the contention made by the appellant. We think, however, when these cases are analyzed and understood they do not justify the conclusions reached by appellant, and are not persuasive that there was error in the failure of the court to direct a verdict upon this proposition.

The most favorable aspect upon which appellant might have insisted, was that this question of proximate cause of the injury be determined by the jury. Under the facts here stated, however, we have decided that the original act of negligence on the part of appellant in leaving the open hole near the sidewalk and on the street was a continuing negligence, a form of nuisance, a potential threat to the safety of those who traveled upon the street from the time it was left open until there was a temporary closing by the placing of a pole in it, and that the withdrawing or taking it out of the hole left the original negligence, menace or threat just as it was in the beginning; that no act of those who had protected

temporarily the original wrongdoer caused the hole to be there at the time Mrs. Marsh was injured. It had been there all the time, but there had been a temporary neutralization of the potential danger. Stated otherwise, the digging of this hole and the leaving of it unsealed, uncovered were the sole and only acts of negligence. There was certainly no negligence of the WPA laborer in placing the pole in the hole so that his act was an efficient cause of the injury. We do not say there was any act of negligence or wrongdoing as a matter of law in the matter of the playing boys in the removal of the broken pole.

The only other question relied upon by the appellant was the fact that the trial court refused the appellant a right to offer or submit for inspection of the jury photographs made of this hole, at the place of the injury, very shortly after the time of the accident.

We have examined the authorities offered by the plaintiff in regard to this question. We have examined the photographs which were offered upon trial. It is argued that there was placed in the hole, before the picture was taken, to mark the place of the hole, so that it would show in the photograph, a stick; that otherwise the situation was the same as it was at the time of the accident. If this statement could be said to be accurate, beyond dispute, we should not hesitate to announce there was error in refusal by the court to permit the photographs to be used. For instance, we have known occasions when a yardstick would be used when photographs were taken of a fence, or other object, to give a clear impression of the height or depth of the matter in controversy, or something of its relative size. Sometimes an ordinary man would stand near the object being photographed in order that it might be compared to him; so, in this case, if the object placed in this hole had been only such an instrument as might have served as a marker, the question would have been different. Here, however, there was something like a post or maybe larger object placed in the hole before the photograph was made, which might have had a tendency to make the appear-

ance of the hole smaller than it really was. Moreover, it might have meant some undue emphasis to some phase of the case not now apparent. At any rate, we do not think the court abused judicial discretion under the circumstances apparent from the evidence in this case and from the pictures, which we have examined, in the refusal to permit them to be offered in evidence. But even if the photograph had merely had a yardstick, or similar object, appearing in it, under the facts disclosed here, we would not perhaps be able to determine that there was prejudicial error; for the reason, as we understand it, the principal purpose of offering this photograph was to show the location of this hole, rather than any other fact in relation to it, and we think the evidence clearly establishes that it was not upon the sidewalk as unnecessarily urged by appellee's counsel, nor was it so placed that Mrs. Marsh may have been deemed guilty of contributory negligence as a matter of law in falling therein.

As we understand the proposition the statute of limitations was abandoned, and that the case was tried upon appellee's theory that if appellant was negligent in the digging of a hole and leaving it uncovered there was a continuing negligence. Appellant did insist that since Mrs. Marsh failed to recover in her suit, filed and tried at some time prior to the filing of this action, the verdict and judgment therein are conclusive here.

This case might be maintained in spite of that theory under the doctrine of *Leech* v. *M. P. Rd. Co.*, 189 Ark. 161, 71 S. W. 2d 467.

The judgment is affirmed.