ARKANSAS TOBACCO CONTROL BOARD *v.*
Brenda SITTON

03-414                                              166 S.W.3d 550

Supreme Court of Arkansas
Opinion delivered May 6, 2004

358

*Mike Beebe*, Att'y Gen., by: *Arnold M. Jochums*, Ass't Att'y Gen., for appellant.

*Gill, Elrod, Ragon, Owen, & Sherman, P.A.*, by: *John P. Gill*, for appellee.

*Lax, Vaughan, Fortson, McKenzie & Rowe, P.A.*, by: *Grant E. Fortson, amicus curiae.*

Jim Hannah, Justice. The Arkansas Tobacco Control Board (ATCB) appeals a decision of the Pulaski County Circuit Court finding that in the absence of the ATCB adopting regulations defining the statutory terms "trade discounts" and "rebate," the Unfair Cigarette Sales Act (UCSA) prohibition against rebates is void for vagueness as applied in this case. We affirm the circuit court and hold that a person of ordinary intelligence is not on fair notice of whether payments to Dodge Stores (Dodge)[1] were permitted "trade discounts" or prohibited "rebates." Therefore, the UCSA is unconstitutional as applied in this case.

### Facts

A retailer complained to the ATCB that Dodge was retailing cigarettes at a price below the price allowed by law. The alleged violation reported to the ATCB was the sale of two packs of

---

[1] Brenda Sitton is the permitee on tobacco sales at issue, and is thus the named party; however, for the sake of clarity we will discuss the Dodge Stores where Sitton's permitted cigarettes were sold.

Marlboro cigarettes for $5.18. According to the testimony of Charlie Davis, director of the ATCB, the retail price of the Marlboro cigarettes absent discounts to the retailer should have been $6.48. Davis stated that he visited the Dodge store in Hot Springs to investigate the allegation that cigarettes were being sold below the retail price allowed by law. Upon Davis's arrival, store manager John Flurry confirmed that the two packs of Marlboro cigarettes were being sold for $5.18 plus tax. When asked why the price was so low, Flurry contacted Dodge's accountant Diane Floyd, who informed Davis that Dodge received a $1.00 "rebate" from the manufacturer and a five cent "discount" from the wholesaler McLane.

Davis testified that Floyd's statement that Dodge received a "rebate" that caused him to refer the matter to Greg Sled of the ATCB for an investigation into whether Dodge was receiving prohibited "rebates."

At the time of these events, Dodge had a "Distribution Service Agreement" with McLane Company, Inc. Under the terms of the agreement, Dodge agreed to purchase products and services needed to run the stores, such as deli foods, candy, snacks, tobacco products, health and beauty aids, and so on. The agreement required payment for products and services within seven days of the statement date. Under the agreement, cigarettes were billed separately from other products and services. Exhibit "B" to the agreement set out billing on cigarettes and contains a table that shows the charges in each state. The price in Arkansas is set out as "FAIRTRADE" rather than a stated price. This is a reference by McLane to the fact that Arkansas has a fair-trade law on cigarettes and price is controlled by law.

According to the testimony of James Billingsley, accounting officer for Dodge in Arkansas, the retail price of cigarettes in Arkansas is the basic cost plus 6%. Billingsley testified that "basic cost" is calculated by taking the "invoice price less manufacturer trade discount less wholesaler trade discount. . . ." According to Billingsley, "The state minimum price is calculated by invoice price less trade deduction plus 6%." Sled examined Dodge's pricing documents and testified that:

> The Dodge Store document refers to Cigarette Allowance. On my summary I used the word rebate. I believe the payment was a rebate. It was a check paid back to Dodge Stores from McLane. If it had been an allowance it would have been taken off the invoice. But

since it did not show up on the invoice and it was a totally separate transaction involving a check paid back, I consider it a rebate. Also, Ms. Floyd called it a rebate. Later she called it something else.

Sled also testified that "Evidence that the alleged rebates injured or impaired or destroyed competition is that a complaint came from a competitor."

After the hearing before the ATCB, the board concluded that payments by McLane to Dodge of $1.00 for each carton sold to Dodge constituted an illegal "rebate." The board ordered Dodge to pay a civil penalty of $225,000 based on $1000 for each violation and suspended Dodge's tobacco permits for thirty days. Dodge sought review in circuit court asserting that the UCSA as applied to Dodge was unconstitutional. The circuit court noted that neither "trade discount" nor "rebate" is defined in the UCSA, and that although the ATCB is free to define both terms, it has only chosen to define "rebate," which is broadly defined to include financial incentives, credit, inducements, allowances, compensation, "other benefit," or "Tying Agreements." The circuit court concluded that in the absence of the ATCB adoption of a definition of "trade discount," and based on the above noted facts, "a person of ordinary intelligence is not on fair notice of whether the payments to Plaintiffs were permitted 'trade discounts' or prohibited 'rebates.'" The circuit court held that this UCSA prohibition against "rebates" is void for vagueness as applied in this case. The State has appealed this decision of the circuit court.

### Standard of Review

Where a party appeals a decision of an administrative agency, this court reviews the decision of the agency rather than the decision of the circuit court. *H.T. Hackney, Co. v. Davis*, 353 Ark. 797, 120 S.W.3d 79 (2003). However, the appeal in this case is from a decision of the circuit court declaring that the UCSA is unconstitutional as applied. The present case is therefore not an appeal from a decision of the ATCB.

The issue of the constitutionality of the statutes and regulations had to be raised before the board. *Arkansas Contractor's Licensing Bd. v. Pegasus Renovation*, 347 Ark. 320, 64 S.W.3d 241 (2001). However, an administrative agency lacks the authority to decide the issue of the unconstitutionality of a statute. *A.T.&T. v.*

*Arkansas Pub. Serv. Comm'n.,* 344 Ark. 188, 40 S.W.3d 273 (2001). The ATCB rightly declined to decide the issue of constitutionality.

■■ The issue of the constitutionality of the UCSA was raised before the ATCB and, thus, the issue was preserved for consideration by the circuit court. *Pegasus Renovation, supra.* The issue presented by this appeal is whether the circuit court erred in declaring the UCSA unconstitutional as applied. All statutes are presumed constitutional and we resolve all doubts in favor of constitutionality. *Ester v. Nat'l. Home Ctrs., Inc.,* 335 Ark. 356, 981 S.W.2d 91 (1998). The party challenging a statute's constitutionality has the burden of proving that the act is unconstitutional. *Id.* Further, when considering the validity of a rule or regulation, this court gives the same presumption of validity it would give to a statute. *McLane Co. v. Davis,* 353 Ark. 539, 110 S.W.3d 251 (2003).

## Void for Vagueness

■■■ The circuit court declared that "a person of ordinary intelligence is not on fair notice of whether the payments to Plaintiffs were permitted 'trade discounts' or prohibited 'rebates.'" A law is unconstitutionally vague under due process standards if it does not give a person of ordinary intelligence fair notice of what is prohibited. *Night Clubs, Inc. v. Fort Smith Planning Comm'n,* 336 Ark. 130, 984 S.W.2d 418 (1999); *Craft v. City of Fort Smith,* 335 Ark. 417, 984 S.W.2d 22 (1998). Similarly, a statute is void if it is so vague and standardless that it allows for arbitrary and discriminatory enforcement. *Craft, supra.*

■■ A statute is constitutional if the language conveys sufficient warning when measured by common understanding and practice. *Night Clubs, supra.* However, a statute also must not be so vague and standardless that it leaves judges free to decide, without any legally fixed standards, what is prohibited and what is not on a case by case basis. *Thompson v. Ark. Soc. Servs.,* 282 Ark. 369, 669 S.W.2d 878 (1984).

The ATCB first argues that the UCSA was not void on its face. Citing *Linder v. Linder,* 348 Ark. 322, 72 S.W.3d 841 (2002), the ATCB argues that the circuit court found that the UCSA was void on its face and argues that to uphold this finding, Dodge had to show "that under no circumstances can the statute be constitutionally applied." Dodge argues that the challenge is not that the

UCSA is void on its face. Dodge's Petition for Review filed in the circuit court asserted that the definitions of trade discounts and rebates applied in this case were overly broad, vague and ambiguous, and in violation of the United States and Arkansas Constitutions. The circuit court considered not only the UCSA but also the ATCB's regulations and its application of the UCSA and the regulations. The challenge was thus that the statute and regulation were void as applied to Dodge.

■   Regarding constitutionality as applied, we stated in *Ghegan v. Weiss*, 338 Ark. 9, 991 S.W.2d 536 (1999):

> In numerous cases, we have held that a litigant has standing to challenge the constitutionality of a statute if the law is unconstitutional as applied to that particular litigant. *Morrison v. Jennings*, 328 Ark. 278, 943 S.W.2d 559 (1997); *Hamilton v. Hamilton*, 317 Ark. 572, 879 S.W.2d 416 (1994); *Medlock v. Fort Smith Serv. Fin. Corp.*, 304 Ark. 652, 803 S.W.2d 930 (1991). The general rule is that one must have suffered injury or belong to a class that is prejudiced in order to have standing to challenge the validity of a law. *Morrison, supra; Medlock, supra.* Stated differently, plaintiffs must show that the questioned act has a prejudicial impact on them. *Tauber v. State*, 324 Ark. 47, 919 S.W.2d 196 (1996); *Garrigus v. State*, 321 Ark. 222, 901 S.W.2d 12 (1995).

*Ghegan*, 338 Ark. at 14-15. The ATCB applied the terms of the statute and its regulations to Dodge in deciding that the funds received from McLane were prohibited rebates and assessed a $225,000 civil penalty. At issue is the meaning of the terms "trade discount" and "rebate." As the circuit court noted, neither term is defined in the statute. The ATCB chose to define "rebate" by regulation but did not define "trade discount."

■   The purpose of the UCSA "is to promote fair and honest competition by prohibiting the sale of cigarettes below cost in the wholesale or retail trades that are made with the intent of injuring competitors or destroying or substantially lessening competition." *McLane Co. v. Weiss*, 332 Ark. 284, 290, 965 S.W.2d 109 (1998). The UCSA declares it illegal for a wholesaler or a retailer to sell cigarettes below cost with an intent to injure competition. Ark. Code Ann. § 4-75-708(a) (Repl. 1998).

Pricing begins by determining cost. That requires that one first determine the "[b]asic cost of cigarettes." Ark. Code Ann. § 4-75-702(1) (Repl. 1998).

"Basic cost of cigarettes" means whichever of the two (2) following amounts is lower, namely, the invoice cost of cigarettes to the wholesaler or retailer, as the case may be, or the lowest gross replacement cost of cigarettes to the wholesaler or retailer, as the case may be, within thirty (30) days prior to the date of sale, in the quantity last purchased, whether within or before the thirty-day period, less, in either of the two (2) cases, all trade discounts[2] except customary discounts for cash, plus the full face value of any stamps or any tax which may be required by any cigarette tax act of this state or political subdivision thereof, now in effect or hereafter enacted, if not already included in the invoice cost of cigarettes to the wholesaler or retailer, as the case may be;

Id. Cost to the retailer then is determined once basic costs is calculated:

"Cost to the retailer" means the basic cost of the cigarettes involved to the retailer plus the cost of doing business by the retailer as evidenced by the standards and methods of accounting regularly employed by him or her and must include, without limitation, labor including salaries of executives and officers, rent, depreciation, selling costs, maintenance of equipment, delivery costs, all types of licenses, taxes, insurance, and advertising.

In the absence of the filing with the Arkansas Tobacco Control Board of proof satisfactory to the board of a lesser or higher cost of doing business by the retailer making the sale, the cost of doing business by the retailer shall be presumed to be six percent (6%) of the basic cost of cigarettes to the retailer.

Ark. Code Ann. § 4-75-702(4)(A-B) (Repl. 1998). We now come to "trade discounts" and "rebates." Under the statutory scheme, "trade discounts" may be deducted from the basic cost of cigarettes; however, Ark. Code Ann. § 4-75-708 (Repl. 1998) makes it illegal to sell at less than cost by the use of rebates, or concessions "of any kind or nature whatsoever . . . ." Ark. Code Ann. § 4-75-708(a-c).

Neither "trade discounts" nor "rebates" are defined in the UCSA. However, the ATCB defined "rebates" as follows:

---

[2] Various changes were made to the UCSA by Act 627 of 2003, including deletion of "Trade Discounts" from Ark. Code Ann. § 4-75-702(1). The events giving rise to this case predate Act 627 of 2003.

"Rebate" or "Concession" shall mean any direct or indirect:

(1) financial incentive, (including, but not limited to, extended credit) inducement, allowance, compensation, other benefit or Tying Agreement (as defined herein) offered or extended to any Customer Of A Wholesaler (as defined herein) in connection with the sale of cigarettes;

(2) providing of advertising, promotional or marketing products, displays, give away items or services to any Customer Of A Wholesaler, with the exception of those materials or displays provided by the manufacturers which are delivered by the Wholesaler; or

(3) providing any of the above to any affiliate, owner, subsidiary, or agent of any Customer Of A Wholesaler.

Arkansas Tobacco Control Board Rules and Regulations, Secion 9.1 (A).

Davis's testimony before the ATCB concerning the distinctions between allowed "trade discounts" and prohibited "rebates" is less than clear. As noted, a rebate includes a "financial incentive," and thus, a financial incentive would be illegal. The following testimony of Davis is instructive:

Q: "What is the difference between a financial incentive and a trade discount, if any?"

A: "I don't—I don't— they go pretty much hand in hand."

When asked to define "Trade Discounts," Davis stated it could be a discount on products, that there was no exact definition, but that it was "extra benefits or money." Then Davis went on to state:

The law is interpreted by me as requiring the trade discount to appear on the invoice. This is based on the requirement that the invoice has to show an accurate sale from the wholesaler. This is so the wholesaler–retailer transaction can be audited by the State. If it is not on the invoice, it's not a wholesaler–retailer trade discount.

Sled also testified consistently that because the payment was by way of a check after the sale and did not appear on the invoice, it was a prohibited rebate.

██ ██ We find nowhere in the regulations nor the statutes that in order to be a "trade discount" the price reduction must appear on an invoice. The argument of the ATCB is in essence that if the price reduction occurs or is received after the sale then it is a rebate.[3] While this argument is not without its limited logic in that many of us are accustomed to sending in coupons for return of a rebate after purchasing some item, such a definition is not found within the statutes nor the regulations. We are told by way of the statutes, regulations and testimony of ATCB employees that "trade discounts" are allowed, that "rebates" are not allowed, that a "rebate" includes financial incentives, and that a "trade discount" is a financial incentive. If we accept the ATCB's argument, we would allow the ATCB to subjectively enforce the UCSA according to its own idea of what a "trade discount" is and what a "rebate" is. Davis testified that "[t]he law is interpreted by me as requiring the trade discount to appear on the invoice." If Davis changes his opinion next month about what "trade discount" and "rebate" mean, the law on cigarette sales changes. As the bankruptcy court for the Northern District of Ohio aptly stated:

> The rule of law requires that creativity, however well-intentioned, is restrained by the language of the statute. Otherwise, we are subject to the frustrations of an Alice in Wonderland character, as we learn that a word means exactly what someone else chooses it to mean, neither more nor less. Without such boundaries, the rule of law becomes as mad as a hatter.

*In re LTV Steel Co, Inc.*, 299 B.R. 863, 874 (N.D. Ohio 2003). Wholesalers and retailers of tobacco, who are presumably professionals in their fields, profess confusion arising from the defined term and the undefined terms. We agree that the terms "trade discount" and "rebate" are unclear under the existing UCSA and ATCB regulations

---

[3] The Supreme Court of Maine in *Delogu v. City of Portland*, 843 A.2d 33, 43, (Me. 2004) cited Black's Law Dictionary for the proposition that a rebate is a "[a] return of part of a payment, serving as a discount or reduction." *Black's Law Dictionary* 1273 (7th ed. 1999)." This is somewhat consistent with the ATCB's argument. However, the federal district court for the district of Massachusetts found a rebate is a kind of discount, as well as a reduction in price. *U.S. v. Shaw*, 106 F. Supp.2d 103 (D. Mass., 2000). There is no universal definition that a rebate is a return of money after the sale as opposed to being a discount as a reduction in the price at the time of sale.

as to what an allowed "trade discount" is as opposed to a prohibited "rebate." The law is unconstitutionally vague under due process standards because it does not give a person of ordinary intelligence fair notice of what is prohibited. *Night Clubs, supra.* The changes in the law in 2003 by the General Assembly appear to have been intended to cure some of the confusion giving rise to this appeal. The circuit court is affirmed on its conclusion that the law is unconstitutional as applied; and, therefore, the issues raised by Dodge on cross-appeal are moot.

Affirmed.