BART F. VIRDEN, Judge
David Brennan challenges the White County Circuit Court's order dismissing his request for declaratory judgment regarding the constitutionality of the White County ordinance prohibiting the manufacture and sale of alcohol and the "local-option" set forth in Arkansas Code Annotated sections 3-8-801 to -811. We affirm.
I. Relevant Facts
On September 11, 2017, Brennan filed a complaint in the White County Circuit Court requesting that the court determine the constitutionality of the local-option framework allowing White County citizens to vote to prohibit the manufacture and sale of alcoholic beverages. In his complaint, Brennan asserted that the local-option framework is unconstitutional on its face and violates his substantive due-process rights; namely, his right to contract and association. Brennan, who lives in Searcy, asserted that he wishes to apply for a liquor license and open a package store in his home town, that he wants to consume alcohol at restaurants in Searcy, and that he would like the option to purchase alcohol at stores without having to travel outside his county. Brennan contended that prohibition of the sale of alcohol in White County negatively affects his ability to safely travel along the county highways, and he suffers an "unnecessarily increased risk of being involved in an alcohol-related, fatal crash." Brennan also argued that in dry counties, drug-related crime constitutes a greater threat to the public than in counties where the sale of alcohol is legal.
White County filed a motion to dismiss Brennan's complaint, arguing that the local-option framework is constitutional as a matter of law. Brennan responded to the motion to dismiss, contending that there is no governmental purpose furthered by the local-option framework. Brennan urged the circuit court to apply the heightened level of scrutiny provided for in the Arkansas Constitution to determine the constitutionality of the statutes. White County countered Brennan's argument by explaining the myriad government interests served by the local-option laws, including the promotion of public health, reduction in crime and related law-enforcement costs, increase in worker productivity, and reduction of health-care costs. White County also asserted that under either the Arkansas Constitution or the federal Constitution, the rational-basis test is the appropriate test for ascertaining the constitutionality of the statutes.
On April 24, 2018, the circuit court entered an order dismissing Brennan's complaint. The circuit court determined that White County's local-option ordinance and the statutory framework allowing the local option are subject to the rational-basis test under the due-process provisions of both the Arkansas Constitution and the U.S. Constitution and that the local-option framework is constitutional as a matter of *581 law. Brennan timely filed his notice of appeal.
On appeal, Brennan asserts that both the statutory local-option framework and the local prohibition of alcohol sales in White County violate citizens' "rights of contract and association" and "the right to engage in otherwise legal business activities and relations[.]" He argues that no legitimate state interest is furthered by these laws and that police power may not be used to impose the "majority morality" on those whose conduct does not harm others. Brennan also asserts that the Arkansas Constitution requires a heightened level of scrutiny for the state's use of police power.
Alternatively, Brennan argues that if this court decides there is a legitimate state interest involved here, the local-option framework is an arbitrary and ineffective way of advancing those interests; thus, the framework is unconstitutional. Lastly, Brennan contends that subsequently enacted legislation fundamentally conflicts with the local-option framework, rendering the local option "the quintessence of irrational." We affirm.
II. Standard of Review
This court reviews a circuit court's decision to grant a motion to dismiss pursuant to Arkansas Rule of Civil Procedure 12(b)(6) by treating the facts alleged in the complaint as true and by viewing them in the light most favorable to the plaintiff. Archer v. Sigma Tau Gamma Alpha Epsilon, Inc. , 2010 Ark. 8, at 4, 362 S.W.3d 303, 306. In viewing the facts in the light most favorable to the plaintiff, the facts should be liberally construed in the plaintiff's favor. Id. Our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. Id.
III. Points on Appeal
A. The Rational-Basis Test
First, we address Brennan's assertion that the circuit court erred in finding that the rational-basis test is the correct test to determine the constitutionality of the local-option framework. Brennan urges this court to perform its analysis under a heightened level of scrutiny; however, his argument is not well taken, and we hold that the rational-basis test applies here.
Brennan contends that Arkansas law requires that "legislation must bear a real or substantial relationship to the protection of public health, safety and welfare, in order that personal rights and property rights not be subjected to arbitrary or oppressive, rather than reasonable invasion." Brennan likens this case to Jegley v. Picado , 349 Ark. 600, 80 S.W.3d 332 (2002), in which our supreme court struck down the sodomy statute as unconstitutional and held that by burdening certain sexual conduct between members of same sex, the statute infringed on the fundamental right to privacy guaranteed under State Constitution. The instant case is distinguishable from Picado because here, no fundamental rights are at stake. In Yarbrough v. Beardon , 206 Ark. 553, 177 S.W.2d 38 (1944), our supreme court held that local-option elections are not an unconstitutional delegation of executive or legislative authority, and liquor-license holders are not deprived of any fundamental right by the local option because holding a liquor license is a privilege-not a fundamental property right. More recently, in Shannon v. Wilson , 329 Ark. 143, 158, 947 S.W.2d 349, 357 (1997), our supreme court held, "The legislature has enacted statutes which regulate the liquor industry. Foremost, our legislature has declared that holding a license to sell alcoholic beverages is a privilege, not a right. Ark. Code Ann. § 3-3-218(a) (Repl. 1996)." Indeed, *582 Arkansas Code Annotated section 3-3-218(a) provides, "It is the specifically declared policy of the General Assembly that all licenses issued to establishments for the sale or dispensing of alcoholic beverages are privilege licenses[.]" No fundamental rights are at stake, and the circuit court did not err in finding that the rational-basis test is the appropriate test for evaluating the constitutionality of the local-option framework.[1]
Another reason the rational-basis test is the correct approach here is that when a statute falls within the General Assembly's police powers to regulate an industry of general public interest, we apply the rational-basis test. McLane S., Inc. v. Davis , 366 Ark. 164, 167, 233 S.W.3d 674, 677 (2006). The states have the power to regulate alcohol pursuant to the Twenty-first Amendment which repealed prohibition and set forth that "[t]he transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI. There is a presumption in favor of the validity of state regulation in the area of liquor control. California v. LaRue , 409 U.S. 109, 118-19, 93 S.Ct. 390, 34 L.Ed.2d 342, (1972). A state has broad power to regulate the times, places, and circumstances under which it will permit the sale of liquor. New York State Liquor Auth. v. Bellanca , 452 U.S. 714, 715, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981) (per curiam). The regulation of alcohol is of general public interest; thus, the rational-basis test is applicable here.[2]
Under the rational-basis test, legislation is presumed constitutional and rationally related to achieving any legitimate governmental objective under any reasonably conceivable fact situation. Eady v. Lansford , 351 Ark. 249, 92 S.W.3d 57 (2002). Additionally, all statutes are presumed constitutional, and we resolve all doubts in favor of constitutionality. Ark. Tobacco Control Bd. v. Sitton , 357 Ark. 357, 166 S.W.3d 550 (2004). The party challenging a statute's constitutionality has the burden of proving that the act is unconstitutional. See id. It is not our role to discover the actual basis for the legislation. Ark. Hosp. Ass'n v. Ark. State Bd. of Pharm. , 297 Ark. 454, 763 S.W.2d 73 (1989). We *583 merely consider whether there is any rational basis that demonstrates the possibility of a deliberate nexus with state objectives so that the legislation is not the product of arbitrary and capricious government purposes. Streight v. Ragland , 280 Ark. 206, 655 S.W.2d 459 (1983). If we determine that any rational basis exists, the statute will withstand the constitutional challenge. Ark. Hosp. Ass'n, supra.
B. Majority Morality
We now turn to Brennan's first argument that the local-option framework is unconstitutional because it serves no purpose other than to impose "majority morality" on the citizens of Arkansas. We disagree and affirm.
Brennan contends that "the reason and only purpose of the local option is to sate the desire of the local majorities to impose their morality on the whole of their populations while allowing the State to benefit from a considerable alcohol economy carried out by the less righteous." Again, Brennan compares the instant case to Picado . Brennan urges this court to determine, as it did in Picado , that there is no legitimate government interest furthered by the challenged statutes and that the only purpose served is to impose a "majority morality." Brennan's argument fails. In Picado , our supreme court recognized that there is no government interest furthered by regulating noncommercial, consensual sexual conduct and that the statute's criminalization of that conduct is an unconstitutional infringement on the right to privacy. However, the courts have long recognized the legitimate government interest in promoting the public health, safety, and welfare associated with the regulation of alcohol. Indeed, in Gipson v. Morley , 217 Ark. 560, 567, 233 S.W.2d 79, 83 (1950), our supreme court held that "it is within the competency of the legislature to determine under the police power what regulatory rules are needful in controlling a type of business fraught with perils to public peace, health and safety as is the liquor business."
The history of the legitimacy of the government interest in regulation of alcohol is not the issue, however. White County has no obligation to produce evidence to sustain the rationality of a statutory classification. See Heller v. Doe by Doe , 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Rational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." FCC v. Beach Commc'ns, Inc. , 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). The courts may not act as a superlegislature "to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." New Orleans v. Dukes , 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Instead, the statute "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Beach Commc'ns , 508 U.S. at 313, 113 S.Ct. 2096. As White County states in its brief, the correlation between alcohol misuse and detrimental effects on a person's health is one of many rational bases for the local-option framework; thus, Brennan has failed to meet his burden of proving that the local-option framework is not rationally related to achieving any legitimate objective of state government under any reasonably conceivable state of facts.
C. Effectiveness of the Local-Option Framework
Brennan's second challenge to the local-option framework is his contention *584 that it is ineffective at furthering the stated government interests of promoting public health, safety, and welfare; thus, the local-option framework is arbitrary and unconstitutional. Brennan cites to research and studies to support his argument that the local option is an ineffective means for promoting highway safety and the reduction of crime. Because the effectiveness of the legislation is not a factor in determining a statute's constitutionality, we affirm.
When reviewing statutes under the rational-basis test, the court must not "review the wisdom or rightness of the legislation" but must only determine if there is any reasonable basis to support it. Four Cty. (NW) Reg'l Solid Waste Mgmt. Dist. Bd. v. Sunray Servs., Inc. , 334 Ark. 118, 127, 971 S.W.2d 255, 260 (1998). As we discussed above, the promotion of public health is a reasonable basis for the existence of the local-option framework. Brennan presents a public-policy argument that the local-option framework does more harm than good when it comes to road safety and illegal-drug abuse; however, effectiveness of the statutes in furthering the government interest is immaterial to our analysis, and Brennan cites no persuasive authority to support his argument that arguably ineffectual legislation is unconstitutional. On this point, we affirm.
D. Acquired Irrationality Due to Subsequent Legislation
Lastly, Brennan argues that subsequent legislation, such as the local option to allow private clubs to serve alcohol within an otherwise dry county, has rendered the local-option framework meaningless; thus, there is no rational basis for the statutes, and they are unconstitutional. Brennan cites no authority to support his argument that subsequent legislation can undermine the constitutionality of previously enacted legislation. This court may refuse to consider an argument when appellant fails to cite any legal authority, and the failure to cite authority or make a convincing argument is sufficient reason for affirmance. Moody v. Moody , 2017 Ark. App. 582, at 12, 533 S.W.3d 152, 160. Moreover, as White County explains, the local-option statutes and the exemption for private clubs set forth in Arkansas Code Annotated section 3-9-221 can be read in harmony. Section 3-9-221 provides that the private-club exemption in dry counties furthers the state interest in promoting economic development and tourism by allowing the sale of alcoholic beverages by the individual drink at private clubs. The counties that opt to remain dry may decide to prohibit alcohol sales at liquor stores, convenience stores, grocery stores, and any other establishment where alcohol may legally be sold; thus, the private-club exemption does not render the local-option framework irrational or unconstitutional.
Affirmed.
Abramson and Hixson, JJ., agree.

Brennan cites to multiple cases in which our supreme court evaluates the constitutionality of various statutes at a heightened level of scrutiny. Each of the cases he cites are distinguishable because they involve a fundamental right that is curtailed in some way by the enacted legislation. See Craighead Elec. Coop. Corp. v. Craighead Cty. , 352 Ark. 76, 98 S.W.3d 414 (2003) (interaction of utility easement and private-property rights); Hand v. H & R Block, Inc. , 258 Ark. 774, 781, 528 S.W.2d 916, 920 (1975) (property rights in franchise name); Beaty v. Humphrey , 195 Ark. 1008, 115 S.W.2d 559 (1938) (property rights of barbers).

Brennan asserts that voter-enacted "initiatives and referenda are inconsistent with the republic form of government-because, lacking the standards and controls of a deliberative legislative body, they offer no protections against a tyranny of the majority." Brennan offers no persuasive authority for his argument, and again he cites us to a case in which fundamental rights are at stake, and the voter-enacted initiative directly violates constitutional principles. See Hunter v. Erickson , 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969) (implementation of a racially discriminatory city ordinance through popular referendum did not immunize it from constitutional challenge). He also cites to City of Eastlake v. Forest City Enterprises, Inc. , 426 U.S. 668, 679, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976), in which the Supreme Court held, "As a basic instrument of democratic government, the referendum process does not, in itself, violate the Due Process Clause of the Fourteenth Amendment when applied to a rezoning ordinance." Brennan's argument that voter-enacted initiatives require a heightened level of scrutiny is unsupported and unpersuasive.